# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE 15, CURRENTLY LOCATED AT HICKORY POLICE DEPARTMENT, 347 2ND AVE SW, HICKORY, NC 28602 | Case No. 3:25-mj-190-SCR |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jared Schaefer, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation Charlotte Division / Hickory Resident Agency and have been since October 2023. My career in law enforcement began in May 2020, where I spent three years as a sworn Police Officer/Detective with the La Porte Police Department (LPPD) in Indiana. I completed the police academy and performed road patrol duties, which consisted of responding to 911 calls for police assistance for all types of crimes, conducting self-initiated activities to deter crime, taking part in community engagement initiatives, and numerous other jobs vital to LPPD's mission.  I then became a member of the Detective Bureau, where I conducted investigations into robberies, burglaries, sexual assaults, child molestations, murder, and other violent crimes for approximately two years. In my time as a law

enforcement officer, I have received several hundred hours of training in the investigations of general crimes, and I have been directly or indirectly involved with investigations of cases of child sexual assault. I have participated in the execution of numerous search warrants, which have resulted in the seizure of evidence and the successful prosecution of individuals. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

3.       This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.       Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2252A(a)(2) (distribution of child pornography) and 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) have been committed by Scott MASON. There is also probable cause to search the Device, identified below, for evidence, contraband, and/or fruits of these crimes further described in Attachment B.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.       The property to be searched is an Apple iPhone 15 with light blue case that has a purple and white sticker with the letter, "F," hereinafter the "Device," as described in Attachment A. The Device is currently located at the Hickory Police Department, located at 347 2nd Ave SW, Hickory, NC 28602.

6.       The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## **PROBABLE CAUSE**

### *Background To The Investigation*

7.        On May 2, 2025, MediaLab.AI Inc. ("MediaLab"), which is a holding company that owns Kik Messenger ("Kik"), submitted CyberTip Report #211342142 to the National Center for Missing and Exploited Children ("NCMEC"). MediaLab identified "1Ranger1872" as an account that uploaded 3 files of suspected child pornographic material (as defined in 18 U.S.C. § 2256(8) and used interchangeably with the term "child sexual abuse material" or "CSAM") to 1Ranger1872's account on Kik. MediaLab provided the following information regarding 1Ranger1872:

> a.   Email: ranger1818@yahoo.com
> b.   Screen/Username: 1Ranger1872
> c.   ESP User ID: 1ranger1872_aa5

8.        For each of the three files of suspected CSAM, MediaLab reported that it reviewed the contents of the file. I have received and reviewed the three files of suspected CSAM from MediaLab. In the information provided below about the three files, I have described the videos from my personal observation of the videos, and I have included the information associated with each video as reported by MediaLab in CyberTip Report #211342142:

> a.   File: 663ef0b9-c530-46ad-92a7-30cdc3e7de09.mp4
>> i.    MD5: a141501ac41eca52d2dfc25a596209cb
>> ii.   IP Address: 65.191.103.90 (Port: 56674)
>> iii.  Event: Login
>> iv.   Date/Time: 04-17-2025 13:52:38 UTC
>> v.    Additional Information: Video was shared via forwarding in a private chat message to another user.
>> vi.   Description: 24 second video of two suspected pubescent minor females kissing and digitally penetrating one another.
>
> b.   File: 5c59d5fc-d5b9-4578-9519-e40713fef520.mp4
>> i.    MD5: c6a6e89c151ccda4fc0d824b5a4235b7
>> ii.   IP Address: 65.191.103.90 (Port: 60273)

iii. Event: Login
iv. Date/Time: 04-23-2025 14:39:03 UTC
v. Additional Information: Video was shared via forwarding in a private chat message to another user.
vi. Description: 57 second video of a suspected pubescent minor female performing oral sex on an adult male's penis to the point of ejaculation.

c. File: d02294c5-0dd2-4fc2-991d-d88581b8eee8.mp4
i. MD5: 431f236288317ca7283da05071377540
ii. IP Address: 174.216.148.11 (Port: 12538)
iii. Event: Login
iv. Date/Time: 04-30-2025 13:32:41 UTC
v. Additional Information: Video was shared via forwarding in a private chat message to another user.
vi. Description: 28 second video of a pubescent minor female masturbating in the shower.

8. With regard to the last file, labeled "d02294c5-0dd2-4fc2-991d-d88581b8eee8.mp4," NCMEC identified this file as part of a known CSAM Series called "Flower Lights."

*Identification of Second Kik Account*

9. On or about May 23, 2025, Kik responded to legal process requesting subscriber information for 1Ranger1872 and any Kik accounts associated with email "ranger1818@yahoo.com." Kik responded with information for 1Ranger1872 and it identified another account, 2ranger1872. Kik provided the following information for both accounts:

a. Account 1:
i. Username: 1Ranger1872
ii. Email: ranger1818@yahoo.com
iii. Account Registration: 07/26/2024

b. Account 2:
i. Username: 2ranger1872
ii. Email: ranger1818@yahoo.com
iii. Account Registration: 05/02/2025

10.     On May 2, 2025, and then again on June 27, 2025, preservation requests were sent to MediaLab for both accounts.

*Identification of MASON as the User of 1Ranger1872 and 2ranger1872*

11.     The investigation has revealed evidence showing that MASON is probably the user of 1Ranger1872 and 2ranger1872.

12.     First, Yahoo identified MASON as the person subscribed to the email account associated with both accounts. On or about May 7, 2025, Yahoo provided the following records in response to legal process regarding Yahoo email address ranger1818@yahoo.com:

    a.  Mail Name: ranger1818@yahoo.com
    b.  Account Status: Active
    c.  Registration Date: 07/26/2024
    d.  Full Name: Scott Mason
    e.  Recovery Phone: +17042975144 (verified on 05/02/2025)
    f.  IP Activity: 2601:152:283:c20:e4cd:7e12:9fca:cf34 / May 02 2025 19:03:31 = Comcast

13.     Second, Charter Communications, Inc., and Verizon identified MASON as the person subscribed to the IP address associated with the IP logins listed for each CSAM file described above. On or about May 9, 2025, Charter Communications, Inc. provided the following information in response to legal process regarding the login IP address, 65.191.103.90, associated with two of the CSAM files described above:

    a.  Subscriber Name: Scott Mason
    b.  Service/Bill Address: 116 Ironwood Ct, Mooresville, NC 28117

14.     On May 30, 2025, Verizon provided the following information in response to legal process regarding the login IP address, 174.216.148.11, associated with the third CSAM file described above:

    a.  Phone Number: 7042975144

b. Name: Scott Mason
c. Device ID: 89148000010817847718
d. IMEI: 354872886850308
e. Address: 116 Ironwood Ct. Mooresville, NC 28117

15.    It should be noted that Verizon provided the same subscriber information for other IP logins associated with 1Ranger1872 that were reported in CyberTip #211342142. Those IP addresses, as reported in CyberTip #211342142, were 174.192.203.240 and 174.192.198.224.

16.    CyberTip #211342142 reported other login IP addresses for 1Ranger1872 that were linked to Holland & Knight's law firm office located in D.C. and the Capitol Hill Club in D.C. Open-source research revealed that MASON is a Senior Policy Advisor who works for Holland & Knight, and he works on lobbying and government affairs consulting, focusing on Capitol Hill, among other government agencies.

17.    On or about May 6, 2025, Comcast Cable Communications provided the following information in response to legal process regarding the login IP address, 71.25.22.241, reported in CyberTip #211342142 as having been used multiple times between April 30 to May 1, 2025, to log into 1Ranger1872:

a. IP Address: 71.25.22.241:
    i. Subscriber Name: Holland Knight
    ii. Service Address: 800 17th St. NW STE 1100 Washington, DC 20006
    iii. Billing Address: 524 Grand Regency Blvd. Brandon, FL 33510
    iv. Phone Number: 202-457-7070

18.    Continuing on or about May 6, 2025, Comcast Cable Communications provided the following information in response to legal process regarding the login IP address, 50.144.178.82, reported in CyberTip #211342142 as having been used once on April 30, 2025, to log into 1Ranger1872:

a. IP Address: 50.144.178.82 Port 49493 assigned on 04-30-2025 at 01:32:34 UTC:

i. Subscriber Name: Capitol Hill Club
ii. Service/Billing Address: 300 First St. SE STE 4, Washington, DC 20003
iii. Account Status: Active

19. Based on information and belief, the Capitol Hill Club is a meeting place for lobbyists, among other professionals.

20. Comcast Cable Communications further provided information showing that the 1Ranger1872 user logged into the account from an IP address subscribed to an apartment located .2 miles away from the Capitol Hill Club. As reported by CyberTip #211342142, IP address 98.192.220.140 was used 35 times to log into 1Ranger1872 between April 30 and May 1, 2025. The subscriber information for that IP address is:

i. Subscriber Name: Surya Gunasekara
ii. Service/Billing Address: 408 S Capitol St. SE Apt. 1, Washington, DC 20003
iii. Account Status: Active
iv. Start of Service: 11/29/2021

21. Information provided by Comcast Cable Communications confirmed that MASON logged into his Yahoo account, ranger1818@yahoo.com, on May 2, 2025, from the same apartment described above located at 408 S Capitol St. SE Apt 1, Washington, DC 20003. Comcast provided the following information in response to legal process regarding Yahoo Login IP Address: 2601:152:283:c20:e4cd:7e12:9fca:cf34 on May 02 2025 19:03:31 UTC PORT 55440 obtained directly from Yahoo's response to legal process:

a. Subscriber Name: Surya Gunasekara
b. Service/Billing Address: 408 S Capitol St. SE Apt 1, Washington, DC 20003
c. Phone Number: 202-288-8657
d. Account Status: Active
e. Start of Service: 11/29/2021

22. The FBI conducted open-source research for phone number 704-297-5144, which is the recovery phone number for the Yahoo email account and the subscriber phone number for the Verizon IP address described above. FBI located several email documents from MASON, where he describes himself as Senior Policy Advisor for Holland & Knight with the cell phone number listed as 704-297-5144.

*MASON Is Actively Using 2ranger1872*

23. On June 13, 2025, an FBI Undercover Agent made contact with 2ranger1872 where they discussed their interests in teenage females. 2ranger1872 disclosed he gets to "perv" and "spy" on his purported 16 and 18-year-old daughters, but more so the 16-year-old one. 2ranger1872 expressed how amazing his daughter's body was when she was 13 years old. 2ranger1872 disclosed he rubbed her vagina while she sat on his lap a few years ago and told her it had to be a secret. 2ranger1872 said he was into teens. Open-source research indicates that MASON does not have any female children.

24. I inquired with NCMEC whether there have been any Cybertips related to 2ranger1872, and NCMEC confirmed that there were not any reports.

*Federal Search Warrants For Kik Accounts 1Ranger1872 and 2ranger1872*

25. On July 1, 2025, law enforcement obtained a federal search warrant for Kik accounts *1Ranger1872* and *2ranger1872*. *See 3:25-mj-00173-SCR* (WDNC Jul. 1, 2025) (SEALED).

26. On July 2, 2025, Kik provided records in response to the search warrant. A review of the records revealed that MASON distributed the media below from the 1Ranger1872 account:

   a. Approximately 27 images of a minor female ("MFV1"), all likely taken from social media accounts, were cropped and distributed from the 1Ranger1872 account. Two images and two videos of MFV1 were created, adapted, or modified to appear that

MFV1 was engaging in sexually explicit conduct, as explained in more detail below. Using facial recognition technology, law enforcement believes that MFV1 has been identified and is a real person. Accordingly, the creation, adaption, and/or modifications of media depicting MFV1 are "child pornography" within the meaning of 18 U.S.C. § 2256(8)(C).

    i. The first CSAM depiction of MFV1 showed her standing fully clothed. Using unknown technology, the image was modified into a video format to depict MFV1 fully nude and exposing her genitalia and breasts in a lascivious manner. This file was distributed from MASON's residence at 116 Ironwood Ct. Mooresville, NC 28117, utilizing IP Address 65.191.103.90 on 03/28/2025. This file was sent on March 28, 2025, the oldest CSAM found within the account.

    ii. The second CSAM depiction of MFV1 depicted her fully clothed in one photo. The second photo was the same as the first, however, using unknown technology, the image was modified into another image to depict MFV1 fully nude and exposing her genitalia and breasts in a lascivious manner. This file was distributed from MASON's residence at 116 Ironwood Ct. Mooresville, NC 28117, utilizing IP Address 65.191.103.90 on 04/24/2025.

    iii. The third CSAM depiction of MFV1 showed her in an image standing with three other suspected minor females in dresses. Using unknown technology, the image was modified to depict the four minors fully nude and exposing their genitalia and breasts in a lascivious manner. This file was distributed from MASON's residence at 116 Ironwood Ct. Mooresville, NC 28117, utilizing IP Address 65.191.103.90 on 04/24/2025.

    iv. The fourth CSAM depiction of MFV1 was watermarked "PixVerse.ai". The video depicts MFV1 lasciviously exposing her breasts and genitalia with another suspected pubescent minor female also lasciviously exposing her breasts and genitalia. This video then depicts both nude minor females kissing. A web search for "pixverse.ai" revealed that it appears to be a website that uses artificial intelligence to generate images or videos from existing media or text. This file was distributed from MASON's residence at 116 Ironwood Ct. Mooresville, NC 28117, utilizing IP Address 65.191.103.90 on 03/21/2025.

b. File b4307117-352b-474d-b551-663263534f3c: Depicts a minor female who identifies herself to be 13 years old performing oral sex on an adult male. Based on my training and experience and my review of the file, I believe that the minor female appears to be as young as she represented, i.e. 13 years old.

c. File bd92d47d-6a18-40f6-8f58-ee1b75998142: Depicts a minor female who identifies herself to be 17 years old removing her clothing and proceeds to

masturbate. Based on my training and experience and my review of the file, I believe that the minor female appears to be as young as she represented, i.e. 17 years old.

    d.    File d02294c5-0dd2-4fc2-991d-d88581b8eee8: Video of a pubescent minor female masturbating in the shower. This is the same video described above that NCMEC identified as part of a known CSAM series called "Flower Lights."

    e.    File c3c1d617-0515-49da-ab1e-e73633826340: Video depicts an adult man masturbating and saying, "Oh Zoe, oh god, I'm in love with your 16-year-old daughter." The man's face is not visible but, as explained below, law enforcement has reason to believe that it is probably MASON.

27.    The review of 1Ranger1872 further revealed the following message thread on April 21, 2025, between Kik users 1Ranger1872 and youdoyou20252:

    a.    youdoyou20252 Look at her legs and breasts and she's only 16

    b.    1ranger1872: Fck yessss, Spectacular, Omggg

    c.    youdoyou20252: I know you want to fuck your little girls and cuck your wife

    d.    1ranger1872: Yessss

28.    The review of 1Ranger1872 also revealed the following message thread on April 26, 2025, between Kik users 1Ranger1872 and ami_watson:

    a.    ami_watson: What age range do you like?

    b.    1ranger1872: 13+

29.    The content for 1Ranger1872 includes one video and multiple images of MASON's face. In the video, he is looking at the camera and stating the date. Based on my training and experience, this is a common form of establishing "proof of life," which shows the other participant(s) in a chat that the person in the video is real. A review of the videos where MASON describes the date shows that his voice is very similar to the voice of the man who is masturbating in the video described above and labeled c3c1d617-0515-49da-ab1e-e73633826340.

30.     A review of 1Ranger1872 and 2ranger1872 shows that MASON distributed media depicting child erotica. I define child erotica materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct. For example, the 1Ranger1872 account distributed media of minors exposing only their breasts. Other media depicts minors in minimal clothing while posing suggestively towards the camera. In addition to the CSAM and child erotica, MASON also distributed age-difficult sexually explicit media and adult pornography.

*Information from Iredell County Sheriff's Office*

31.     On July 13, 2025, Your Affiant was notified by Iredell County Sheriff's Office ("ICSO") they had investigated Cybertip #182224838 which was received by NCMEC on December 11, 2023. This tip was reported by Kik as well and identified Kik account "jdmasters1" as distributing the CSAM described below. In the Cybertip, Kik reported that the file was uploaded on November 11, 2023.

    a.  Described by Iredell County Sheriff's Office:

        i.  File fbfa57f1-cbec-4b1-b1ee-3f18caf5b822.mp4: a prepubescent white female completely nude sitting on the floor masturbating in front of a camera.

        ii.  The account was logged in from IP Address of 71.71.88.40.

        iii.  Legal process was served to Charter Communications, and they responded with that IP Address Subscriber information of Scott MASON at 116 Ironwood Ct. Mooresville, NC.

    b.  ICSO served a search warrant to Kik for the account, but the account had already been wiped.

c. ISCO performed a field investigation on February 7, 2024, and spoke with MASON's wife. Scott MASON was not home. MASON's wife was unable to recognize the email or username, and ISCO provided an internet safety talk to MASON's wife and closed their case as unfounded.

*Search Warrant Executed at Mason's Residence*

32.     On July 14, 2025, law enforcement executed a search warrant at MASON's residence, located at 116 Ironwood Ct. Mooresville, NC 28117. *See* 3:25-mj-00184-WCM (SEALED). MASON had left moments before law enforcement entered the residence.

33.     Law enforcement located MASON at a local gymnasium. Law enforcement approached MASON and asked him whether he would consent to talking with them. MASON agreed.

34.     Post-*Miranda*, in a recorded conversation, standing next to law enforcement's unmarked vehicle, MASON admitted that he had been using Kik. MASON confirmed that he had used Kik on his phone, which was on his person. MASON claimed, however, that he deleted the application on Saturday, *i.e.* July 12, 2025. He stated that he used Kik for "fantasy" because he had not had sex with his wife for 17 years. He claimed that he talked with numerous users on Kik, but he denied being a part of more than one group chat, which he identified as being called "burning man." When asked about the video described above that depicts a 13-year-old performing oral sex on an adult male, MASON said that if the girl was actually 13 years old, he would agree that the video was child pornography. MASON claimed, however, that he did not recall sending that video.

35.     Law enforcement showed MASON a clothed image of MFV1, and he confirmed receiving nudified media of her, but he claimed the users did not discuss her age. He claimed that

he only ever used the Kik application and never downloaded, saved, or moved any of the media he received from the Kik application to any other form of storage. MASON denied using any artificial intelligence software to modify any media depicting minors. MASON often answered questions by stating that he did not know or did not recall.

36.    At the start of the interview, I asked MASON whether he had his phone on him, and he said yes. I seized the phone based on probable cause, subject to this application for a search warrant.

37.    This warrant seeks authority to search and seize evidence, contraband, and/or fruits of the investigated crimes since January 1, 2023, to the present. While MASON stated that he had only had the Kik account for approximately 1 year, my training and experience suggests that MASON was minimizing his illicit activities and that his offense conduct has gone on for a lot longer. Based on my training an experience, subjects involved in child exploitation cases often minimize their involvement in the criminal activity. These subjects also participate in this activity for lengthy periods of time. MASON expressed his frustration of not having sexual intercourse with his spouse for 17 years and needing this outlet. It appears that MASON was also linked to the Kik Cybertip from the account, jdmasters1, which reportedly uploaded CSAM on November 11, 2023. Additionally, all of the content that law enforcement received from 1Ranger1872 were distributions from his account. Yet, when presented with serval facts of his Kik account distributing CSAM, MASON stated he was unable to recall. When shown the media of MFV1, MASON said others sent that material to him, yet that material was in 1Ranger1872 as distribution to others, not receipt. MASON admitted to having a Telegram account, which in my training and experience is a platform people use to trade CSAM as to remain covert from law enforcement

detection. Accordingly, MASON has probably been engaged in illicit activity regarding CSAM since at least January 1, 2023.

38.     The Device is currently in the possession and storage of the Hickory Police Department ("HPD"), located at located at 347 2nd Ave SW, Hickory, NC 28602. I provided it to HPD for proper storage, as evidence, and for forensic examination, should this warrant be authorized. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession FBI and HPD.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO HAVE A SEXUAL INTEREST IN CHILDREN OR WHO DISTRIBUTE, RECEIVE, AND/OR POSSESS CHILD SEXUAL ABUSE MATERIAL

39.     Based on my previous investigative experience related to child-exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who have a sexual interest in children and/or distribute, receive, or possess images of child sexual abuse material:

a.     Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in images, or other visual media, or from literature describing such activity.

b.     Such individuals may collect sexually explicit or suggestive materials in a variety of media, including images and videos. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children

14

they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Such individuals frequently possess and maintain child sexual abuse material in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children frequently retain those materials and child erotica for many years.

d. Likewise, such individuals often maintain their CSAM images in a digital or electronic format in a safe, secure and private environment, such as a personal computer or other digital devices. These CSAM images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the CSAM images, which are valued highly. Such individuals may specifically maintain devices containing or used to access CSAM in their personal vehicles so as to further conceal and hide those devices from others within a shared household. Some of these individuals also have been found to download, view, and then delete CSAM on their computers or digital devices on a cyclical and repetitive basis.

e. Importantly, evidence of such activity, including deleted CSAM, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

---

[1] *See, e.g., United States v. Sanders*, 107 F.4th 234, 251-52 (4th Cir. 2024) (nine-month delay between criminal acts and issuance of search warrant did not render probable cause stale); *United States v. Ebert*, 61 F.4th 394, 398-99, 401 (4th Cir. 2023) (probable cause for warrant not stale even though "the acts described

f.     Such individuals also may correspond with and/or meet others to share information and materials, correspond with other CSAM distributors/possessors, conceal such correspondence as they do their sexually explicit material, and maintain contact information (e.g., online messaging accounts, etc.) of individuals with whom they have been in contact and who share the same interests in CSAM.

g.     Such individuals prefer not to be without their CSAM for any prolonged time period.

---

in it occurred five-to-eight years earlier," in part because "the nature of the property to be seized is not a consumable, like narcotics," and "child pornography is found on computers and other digital equipment that can be readily stored by offenders for years and also can be retrieved during a digital search even after its ostensible deletion"); *United States v. Espinoza*, 9 F.4th 633, 636-37 (8th Cir. 2021) (seven-month delay between single child pornography upload and search warrant did not render probable cause stale); *United States v. Wagner*, 951 F.3d 1232, 1246-47 (10th Cir. 2020) (six-month delay in obtaining warrant for child pornography offenses did not render probable cause stale); *United States v. Touset*, 890 F.3d 1227, 1238 (11th Cir. 2018) (probable cause for search warrant not stale even though it was obtained one-and-a-half years after defendant apparently paid for child pornography); *United States v. Caroll*, 750 F.3d 700, 708 (7th Cir. 2014) (probable cause to search home for child pornography not stale despite five-year delay before search warrant); *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (probable cause for child-pornography offense not stale despite delay of 20 months before search warrant); *United States v. Burkhart*, 602 F.3d 1202, 1206-07 (10th Cir. 2010) (probable cause for child-pornography offense not stale despite delay of roughly two years and four months before search warrant); *United States v. Allen*, 625 F.3d 830, 842-43 (5th Cir. 2010) (probable cause for child-pornography offense not stale despite delay of 18 months before search warrant); *United States v. Lemon*, 590 F.3d 612, 614-16 (8th Cir. 2010) (probable cause for child-pornography offense not stale despite delay of 18 months before search warrant); *United States v. Frechette*, 583 F.3d 374, 378-79 (6th Cir. 2009) (probable cause for child-pornography offense not stale despite delay of 16 months before search warrant; reversing contrary holding by district court); *United States v. Morales-Aldahondo*, 524 F.3d 115, 117-19 (1st Cir. 2008) (probable cause for child-pornography offense not stale despite delay of more than three years before search warrant); *see also United States v. Boles*, 914 F.3d 95, 100-01, 103-05 (2d Cir. 2019) (good-faith doctrine applied when agents applied for warrant based on information nearly one year old); *United States v. Contreras*, 905 F.3d 853, 858-59 (5th Cir. 2018) ("year-long interval" between child pornography uploads and search warrant did not render the agents' reliance on the warrant objectively unreasonable).\

40.     Based on all of the information contained herein, I believe that MASON likely displays characteristics common to individuals who have a sexual interest in children and/or distribute, receive, or possess images of CSAM, and evidence of that activity will probably be located on the Device.

## TECHNICAL TERMS

41.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of

electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

42. Based on my training, experience, and research, I know that the Device has

capabilities that allow it to serve as a wireless telephone, digital camera, portable media player,

GPS navigation device, and PDA. In my training and experience, examining data stored on devices

of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

43. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

44. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that digital files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

    c. Wholly apart from user-generated files, digital storage media contain electronic evidence of how a device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of

19

operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Device users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

45.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to possess, distribute, receive, or transport CSAM, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my

training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

46. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

47. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## PROTOCOL

48. If the Government, when reviewing the information and documents seized pursuant to this warrant or order, encounters materials that reasonably appear on their face to be subject to the attorney-client privilege or protected by the work product doctrine ("Potentially Protected Materials"), the Government shall immediately cease any further review of those materials. The Potentially Protected Materials must then be sequestered and maintained in such a way that they cannot be accessed inadvertently.

49. In the ordinary course, the Government should then contact the potential privilege holder to determine if an agreement can be reached for how the Potentially Protected Materials will be reviewed.

50.     However, in cases when an investigation is covert and the Government otherwise reasonably believes there is a need for the Potentially Protected Materials to be processed before notice is given to the potential privilege holder, the Government may request, upon written motion supported by applicable authorities, that the Court authorize an appropriate protocol for such a review.

51.     In no such case though, may Potentially Protected Materials be reviewed absent an agreement between the Government and the potential privilege holder or an order of the Court. See North Carolina RPC 252; accord Fed. R. Civ. P. 45(e)(2)(B) (describing handling of privileged material produced in response to a subpoena).

## CONCLUSION

52.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Jared Schaefer
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on July 15, 2025:

SUSAN C. RODRIGUEZ
UNITED STATES MAGISTRATE JUDGE

23

# ATTACHMENT A

The property to be searched is an Apple iPhone 15 with light blue case that has a purple and white sticker with the letter, "F," hereinafter the "Device," as described in Attachment A. The Device is currently located at the Hickory Police Department, located at 347 2nd Ave SW, Hickory, NC 28602.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

The Device is pictured below:

 

Front                          Back

**ATTACHMENT B**

1.     The following materials, which constitute evidence of the commission of a criminal offense, contraband, or the fruits of crime, namely violations of 18 U.S.C. § 2252A(a)(2)(A) (distribution of child pornography) and 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) that have been committed by Scott MASON, including:

   a.   Any visual depictions of child pornography, (as defined in 18 U.S.C. § 2256(8) and used interchangeably with the term "child sexual abuse material" or "CSAM").

   b.   Any visual depictions of child erotica, defined as materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

   c.   Any records or information relating to the advertisement, distribution, transportation, receipt, access, possession, creation, production, reproduction, storage, transmission, or editing of any visual depictions listed in the previous items, as well as any information relating to the identity of any person involved in such actions or any person depicted in such visual depictions.

   d.   Any records or information related to the Kik messaging application.

   e.   Any records related to the ranger1818@yahoo.com email address;

   f.   Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   g.   Records of Internet Protocol addresses used;

h. Records of Internet activity, including search terms, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.